UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

PIYOU ZHAO and ZHIQIANG WANG, on
behalf of themselves and others
similarly situated,                           **MEMORANDUM & ORDER**
                                              18-CV-6452(EK)(VMS)

                    Plaintiffs,

               -against-

KE ZHANG INC. d/b/a KE ZHANG, ZOU JIA
YONG, INC. d/b/a T & T RESTAURANT,
WEN CHAI ZOU, LI HUI ZHU, XIANG KENG
ZHU, and TENGYU ZHU,

                    Defendants.

------------------------------------x

ERIC KOMITEE, United States District Judge:

        Piyou Zhao and Zhiqiang Wang bring this action against

two family-run restaurants, Ke Zhang Inc. ("Ke Zhang") and Zou

Jia Yong, Inc. ("T&T"), and their owners.  Plaintiffs were

initially hired to make deliveries for Ke Zhang, but ended up

making some deliveries for T&T as well.  They claim that during

their employment, the Defendants violated the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL") by

failing to pay them appropriate wages and to provide them

certain wage notices.

        Defendants now move for summary judgment.  They argue

that the FLSA does not apply to them; that no defendant except

Ke Zhang and one of its owners actually qualified as Plaintiffs'

statutory "employers"; that no violation was "willful," and

therefore a two-year statute of limitations should apply to the FLSA claims; and that they acted in "good faith," which precludes liquidated damages.  For the following reasons, the Defendants' motion is granted in part and denied in part.

## I.   Background

The following factual recitation is drawn from the parties' deposition testimony, unless otherwise noted.  The defendants are two restaurants — T&T and Ke Zhang — and their owners.  T&T is a small take-out restaurant in Flushing, Queens that offers breakfast and other light fare.  Deposition of Wen Chai Zou 12:10-13, 13:6-10, 19:9-12, ECF No. 44-7 ("Chai Dep.").  During the period in question, T&T was owned by Wen Chai Zou and her husband Xiang Keng Zhu.[1]  Chai Dep. 9:6-7, 9:21-10:7.  It is not clear from the evidentiary record how profitable T&T was.  Chai Dep. 13:15-18 (testifying that she did not know how much T&T made in sales).  Across the street from T&T is Ke Zhang, a full-service restaurant operated by the T&T owners' son, Tengyu Zhu, and daughter, Li Hui Zhu.  Deposition of Tengyu Zhu 12:6-14, ECF No. 44-8 ("Tengyu Dep."); Chai Dep. 13:19-14:8.  Ke Zhang is a larger restaurant that offers lunch and dinner, and

---

[1]  This Order will refer to the individual defendants by their first names, because several of them share the same last name.

generates between $700,000 and $800,000 per year in sales. Tengyu Dep. 21:22-22:1.

Tengyu hired Plaintiffs Zhao and Wang to make deliveries for Ke Zhang — Zhao in August 2014 and Wang in March 2016.  Deposition of Piyou Zhao 8:15-17, 10:17-20, ECF No. 44-4 ("Zhao Dep."); Deposition of Zhiqiang Wang 7:19-8:2, ECF No. 44-3 ("Wang Dep.").  According to Plaintiffs, they also performed other tasks at Ke Zhang such as deconstructing boxes for recycling and cleaning the parking lot.  Zhao Dep. 9:3-18; Wang Dep. 46:23-47:18.

Plaintiffs also occasionally made deliveries for T&T. T&T did not offer delivery services until Zhao proposed to Chai that he would make deliveries for that restaurant in exchange for breakfast.  Chai Dep. 15:25-16:6; Zhao Dep. 36:21-37:2. Wang also made T&T deliveries in exchange for breakfast.  Wang Dep. 42:2-8; *see also* Chai Dep. 20:18-21.  T&T made only about two to three deliveries per week, *see* Chai Dep. 15:25-16:16, and Tengyu testified that those deliveries typically occurred in the morning, before Ke Zhang opened.  Tengyu Dep. 67:15-25.  Chai coordinated with Plaintiffs when an order needed to be delivered, but Plaintiffs were not always available when asked. Chai Dep. 21:5-11.  Chai's husband Xiang, who is also a defendant here, worked as a cook at T&T but did not interact with either named Plaintiff.  Chai Dep. 21:12-16; *see also*

Deposition of Xiang Keng Zhu, 10:14-16, 14:16-19, ECF No. 44-6
("Xiang Dep."). Chai testified that the value of the breakfasts
that Plaintiffs received in exchange for morning deliveries was
between one and four dollars a day. Chai Dep. 17:2-4, 19:9-16.
She kept no records of how much Plaintiffs would have owed if
they had purchased these meals. Chai Dep. 22:14-21.

The bulk of Plaintiffs' work was making deliveries for
Ke Zhang, where Tengyu was "the boss." Tengyu Dep. 12:2.
Tengyu was in charge of hiring and firing, setting schedules,
and paying salaries. Tengyu Dep. 34:17-19, 59:12-22; Deposition
of Li Hui Zhu 11:2-6, 26:3-6, ECF No. 44-5 ("Li Hui Dep."); Zhao
Dep. 41:18-22. Although Li Hui owns fifty percent of Ke Zhang,
she leaves management decisions to her brother. Tengyu Dep.
12:6-15; Li Hui Dep. 14:16-19. Li Hui had previously worked for
Ke Zhang part-time, but now only comes in for a few hours when
needed, and helps with tasks such as answering the phone,
working the cash register when the cashier is unavailable, and
taking and packing orders. Tengyu Dep. 17:15-21; Li Hui Dep.
17:16-25, 20:18-25.

Tengyu testified that he was not familiar with labor
law requirements, despite being in charge of Ke Zhang's
compensation policies. Tengyu understood that "overtime" meant
an employee working over forty hours in a given week, but he did
not know how to calculate his employees' overtime rates and had

4

never done so before.  Tengyu Dep. 35:10-19.  Tengyu did not keep records of his employees' hours.  He would write his employees' hours "on a piece of paper for myself to review," but then would "basically dispose" of these records "the same day." *Id.* 35:20-36:10.  Tengyu's accountant gave him a wage poster that he hung on the wall, but he "didn't pay attention to it"; he testified that he did not understand it because he can only read a "little bit" of English.  *Id.* 60:10-61:7, 69:11-12. Tengyu did not give Zhao or Wang a "wage notice" when he hired them.  *Id.* 37:17-23, 59:12-19.  He believed that Wang and Zhao made "far more than whatever the government requires" and Tengyu "never imagined" they would challenge their wages.  *Id.* 37:23-38:2, 39:8-11 ("I thought [Zhao made] more than enough.").  Chai also testified that she was not aware of federal or state labor laws.  Chai Dep. 23:2-4.

Tengyu fired Zhao in October 2018 after receiving a customer complaint.  Zhao Dep. 47:16-25.  Wang left Ke Zhang in March 2019 on disability after suffering an injury at that restaurant.  Defs.' Br. in Support of Motion at 8, ECF No. 44-2.

In November 2018, Zhao initiated this lawsuit, which Wang later joined.  The Amended Complaint alleges claims under the FLSA and NYLL, including for unpaid minimum and overtime wages and liquidated damages.  In addition, Plaintiffs allege they were not paid the requisite "spread of hours" pay under the

NYLL, which mandates one additional hour of pay at the state minimum hourly rate for any workday that lasts longer than ten hours.  Plaintiffs also claim they were not provided with paystubs or with a wage notice at the time of hiring, as required by the NYLL.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

The moving party may demonstrate the absence of a genuine issue of material fact "in either of two ways:  (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).  Each assertion at the summary judgment stage must cite to the record or show that an adverse party cannot produce admissible evidence to support a given fact.  Fed. R. Civ. P. 56(c)(1); *see also* Local Rule 56.1.  While all factual

ambiguities must be resolved in favor of the nonmoving party, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation."  *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

When "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court can "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).  In addition, while a court "is not required to consider what the parties fail to point out" in their Local Rule 56.1 statements, it may, in its discretion, opt to conduct its own "assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).

### III. Discussion

### A.   Individual and Enterprise Coverage Under the FLSA

An employer is subject to the FLSA on an employee-by-employee basis if its individual employees are "engaged in commerce or in the production of goods for commerce" (individual coverage), or as to all employees if the *employer* is "an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage).  *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (citing 29 U.S.C. § 207(a)(1)) (emphasis omitted).  While both inquiries consider

7

whether employees have some involvement in interstate commerce, the test for "enterprise coverage" is more lenient.

There is no evidence in the record to establish that the individual coverage test is satisfied. Neither party cited evidence that Plaintiffs "handle[d] or otherwise work[ed] on *goods intended for shipment out of the State*" or "perform[ed] work involving or related to the movement of persons or things . . . *among the several States or between any State and any place outside thereof*." *See* 29 C.F.R. §§ 779.103, 779.104 (emphasis added); *see also McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943) (activities that simply "affect or indirectly relate to interstate commerce" are insufficient for purposes of individual coverage). Indeed, the Plaintiffs' Rule 56.1 Statement does not say anything concerning individual coverage. Ke Zhang and T&T are both based in Flushing, Queens and there is no indication that either Plaintiff made deliveries outside of the state. Plaintiffs concede as much. They call the restaurants "local businesses" and address only "enterprise coverage" in their brief. Pls.' Opp. Br. at 4-5, ECF No. 45. Because there is no evidence that Plaintiffs had "contact with out-of-state customers or businesses, [they] cannot be individually covered under the FLSA." *Yang Li v. Ya Yi Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012) (restaurant servers were not individually covered); *Jian Long Li v. Li Qin Zhao*, 35

F. Supp. 3d 300, 308-09 (E.D.N.Y. 2014) (restaurant employee who only made deliveries intrastate was not individually covered).

Plaintiffs do contend that Ke Zhang and T&T qualify as "enterprises" under 29 U.S.C. §§ 203(s)(1)(A) and 207(a)(1). An employer is an "enterprise" when (1) it has two or more "employees handling, selling, or otherwise working on goods or materials that *have been moved* in or produced for commerce by any person," a different standard than individual coverage, and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A) (emphasis added); *see also Jacobs*, 577 F.3d at 99 n.7. Neither party's Rule 56.1 statement cites evidence relevant to this issue either. Nevertheless, the Court conducted its own inquiry. *Holtz,* 258 F.3d at 73.

There exists a dispute of fact that prevents the Court from deciding whether Ke Zhang is subject to "enterprise coverage" at the summary judgment stage. There is evidence in the record indicating the second element of the enterprise coverage test is satisfied: Tengyu testified that Ke Zhang makes approximately $700,000 to $800,0000 per year in sales. Tengyu Dep. 21:25-22:2. The only question is whether Plaintiffs have raised a triable issue of fact on the first prong. But a plaintiff is "virtually guaranteed to satisfy the first prong,

which, unlike the requirement for individual coverage, does not demand that [the plaintiff] himself" be involved in interstate commerce. *Jian Long Li*, 35 F. Supp. 3d at 306 (quotations omitted). Indeed, the threshold on the first prong is extremely low: courts in this Circuit have found enterprise coverage where employees "merely handled supplies or equipment that originated out-of-state." *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 346 (E.D.N.Y. 2014). Defendants do not contest that these two Plaintiffs did so; instead, they argue only that their restaurants do not "prepare or serve food for interstate consumption" and are "several miles away from any interstate highway." Defs.' Br. in Support of Motion at 9, ECF No. 44-2. I thus assume for purposes of this motion that the restaurant is engaged in interstate commerce as required by enterprise coverage. *See Loo v. I.M.E. Rest., Inc.*, No. 17-CV-02558, 2018 WL 6814368, at *4 (E.D.N.Y. Dec. 27, 2018) (denying summary judgment on enterprise coverage and "assum[ing]" a restaurant was engaged in interstate commerce). Therefore, Defendants are not entitled to summary judgment on the issue of whether Ke Zhang is a covered enterprise.

Plaintiffs have failed, however, to point to sufficient evidence that T&T restaurant qualifies as an enterprise. Chai testified that she did not know how much T&T made in sales, Chai Dep. 13:15-18, and there is simply no other

evidence in the record on this subject.  The Court therefore grants summary judgment for Defendants on the FLSA claims against T&T.  *E.g.*, *Jian Long Li*, 35 F. Supp. 3d at 307 (granting summary judgment where Plaintiff did not cite evidence that the restaurant had gross sales of more than $500,000).

## B.  Employer Status

Ke Zhang and Tengyu Zhu do not dispute that they were Plaintiffs' employers.  Ke Zhang's other owner, Li Hui Zhu, does move for summary judgment on this point, as do T&T and its owners Wen Chai Zou and Xiang Keng Zhu.

In fairly archaic language, the FLSA provides that an entity "employ[s]" those whom it "suffer[s] or permit[s]" to work.  29 U.S.C. § 203(g).  This definition "is necessarily a broad one in accordance with the remedial purpose of the Act." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988).  The FLSA recognizes the possibility of "joint employment," meaning a worker may be employed by more than one entity or individual at the same time.  *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2017 WL 2600051, at *3, *6 (S.D.N.Y. June 15, 2017) (citing 29 C.F.R. § 791.2(a)).

The NYLL defines "employer" to include "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer."  N.Y. Lab. Law §§ 190(3), 651(6).  District courts in

this Circuit have interpreted the FLSA and NYLL definitions to be "coextensive[]." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (collecting cases).  I thus evaluate them together.

Whether an employer-employee relationship exists is grounded in "economic reality rather than technical concepts." *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (cleaned up).  The key question is control, and, as relevant here, the Second Circuit has developed tests to measure both "formal" control and "functional" control, depending on the factual circumstances of a particular case.  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008).

The Second Circuit set out the "formal control" test in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). This test examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter*, 735 F.2d at 12. These factors are sufficient, but not necessary, to establish employer status under the FLSA.  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

In *Zheng v. Liberty Apparel Co.*, the Second Circuit set forth a different test for entities exercising less formal, but "functional," control over a worker. *Id.* at 72. *Zheng* concerned whether a garment manufacturer was a joint employer with its subcontractors, for which the plaintiffs worked directly to assemble the manufacturer's garments. *Zheng,* 355 F.3d at 63-66. The Court asked:

> (1) whether [the manufacturer]'s premises and equipment were used for the plaintiffs' work; (2) whether the [contractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the manufacturer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [the manufacturer] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [the manufacturer].

*Barfield*, 537 F.3d at 143 (citing *Zheng*, 355 F.3d at 68).

In general, *Carter*, *Zheng*, and other cases "provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143. This Court is "free to consider any other factors it deems relevant to its assessment of the economic realities." *Zheng*, 355 F.3d at 71-72. Below I consider whether a dispute of fact exists as to, first, Li Hui's formal control over Plaintiffs,

and second, as to whether T&T and its owners exercised functional or formal control, or some combination thereof.

1. Li Hui Zhu

Plaintiffs have not established that a reasonable juror could find Li Hui to be an "employer."  They point out that Li Hui was the incorporator of Ke Zhang and part-owner. Tengyu Dep. 12:6-25.  "Ownership, or a stake in a company," however, "is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees." *Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013); *see also Salazar v. 203 Lena Inc.*, No. 16-CV-7743, 2020 WL 2489070, at *4 (S.D.N.Y. May 14, 2020) (whether defendant was an "officer or shareholder" was not relevant to "employer" determination).

Plaintiffs also cite testimony that Li Hui would inform Tengyu if a waiter made a mistake or brought a customer the wrong order.  Li Hui Dep. 25:11-18.  But "to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109.  Tengyu testified that Li Hui is "obligated [to inform him] if somebody brought the wrong dish or wrong order" and that "even the other workers are obligated to let me know obviously if an order is wrong or something like that."  Tengyu Dep. 34:11-16.  There is

14

no evidence that Li Hui ever reprimanded or reported Plaintiffs
for delivering the wrong order, or that her communications to
her brother resulted in such discipline.  *Cf. Gallego v. Adyar
Ananda Bhavean Corp.*, No. 16-CV-4631, 2018 WL 4735710, at *4
(S.D.N.Y. Sept. 30, 2018) (defendant was not an "employer" where
he testified that it was "not [his] job" to reprimand restaurant
workers if they were not working fast enough).

Plaintiffs also urge the Court to rely on Tengyu's
purported testimony that he and Li Hui met "quite often" to
discuss the business.  Pls.' Opp. Br. at 2, ECF No. 45.  This is
a mischaracterization of the record.  Tengyu testified that he
would call his sister "a few days ahead of" when she was needed
at the restaurant, but that they would "meet quite often" so he
would "also use that [] opportunity to let her know" when to
come into work.  Tengyu Dep. 17:15-18:15.  When pressed if he
had a "meeting time" with his sister every week, he responded,
"[s]he is my older sister, so meeting her is quite a normal
thing."  *Id.*

Plaintiffs have failed to identify evidence — even
disputed evidence — sufficient to establish that Li Hui
exercised "formal control" over Plaintiffs under the *Carter*
test.  Li Hui's part-ownership, together with the testimony that
she would point out workers' mistakes, are simply insufficient —
both on their own and in light of the undisputed evidence

proffered by Defendants.  Defendants produced testimony that:
Tengyu was responsible for hiring and firing employees, setting
their schedules, and overseeing their pay.  Tengyu Dep. 34:17-
19; Li Hui Dep. 11:2-6, 26:3-6; Zhao Dep. 41:18-22.  Li Hui
provided no input into these decisions, leaving all managerial
responsibilities to her brother.  Li Hui Dep. 11:2-6, 14:16-19,
26:3-6.  She instead performed tasks such as helping with the
cash register, answering the phones, and packing takeout orders.
Tengyu Dep. 17:18-21; Li Hui Dep. 20:18-25; *cf. Gallego*, 2018 WL
4735710, at *4 (defendant was not an employer where his work
"consisted of instructing delivery workers about when food was
ready and where it should be taken").  Defendants' motion to
dismiss Li Hui is granted.

  2. <u>T&T and its Owners, Wen Chai Zou and Xiang Keng Zhu</u>

   There is a dispute of fact about whether T&T qualifies
as a joint employer under the *Zheng* test.  Plaintiffs were not
formally hired by T&T, nor paid by it.  There are indications,
however, that T&T had at least some functional control over
Plaintiffs' work.  Chai agreed to let Plaintiffs make deliveries
for T&T.  Chai Dep. 15:25-16:6.  Chai would call Plaintiffs when
there was a delivery order; Plaintiffs would pick up the orders
at T&T and make deliveries to T&T customers.  *Id.* 20:18-21:11.
These deliveries occurred two to three times a week, on top of
Plaintiffs' delivery schedule for Ke Zhang.  *Id.* 16:11-16;

Tengyu Dep. 67:15-25.  Ke Zhang and T&T were run by the same
family and located across the street from each other, Chai Dep.
13:25-14:4, making it easy for Plaintiffs' work to "shift . . .
from one putative joint employer to another."  *Zheng,* 355 F.3d
at 68.  Although T&T did not pay Plaintiffs, it assumed other
traditional functions of a restaurant employer by offering them
compensation in the form of free meals.  Chai Dep. 15:25-16:6;
Tengyu Dep. 67:15-25; *see also* Defs.' Rule 56.1 Statement ¶ 7,
ECF No. 44-1 (Plaintiffs were provided "free" breakfast, lunch,
and dinner when they worked for Ke Zhang during those times).  A
reasonable juror could thus find that T&T was Plaintiffs'
employer.  Defendants' motion to dismiss T&T is denied.

For similar reasons, a reasonable juror could conclude
that Chai was Plaintiffs' employer.  As part-owner of T&T, *see*
Chai Dep. 9:21-10:7, Zhao proposed to Chai that he would make
deliveries for T&T, and she was responsible for calling
Plaintiffs when T&T received a delivery order.  *Id.* 15:25-16:6;
20:18-21:11; *see also* Chai Dep. 18:6-11 ("[M]y son [Tengyu] said
let him just deliver one or two meals" for T&T).  There is
therefore a dispute, at least, over whether Chai set Plaintiffs'
schedules for T&T.  *See e.g., Hernandez v. Jrpac Inc*., No. 14-
CV-4176, 2016 WL 3248493, at *2, *22 (S.D.N.Y. June 9, 2016)
(individual who "supervised and controlled the employees' work
schedules and conditions of employment" and "assign[ed] them

their job responsibilities" was an employer"); *cf. Jianjun Chen*, 2017 WL 2600051, at *4 (plaintiffs adequately pleaded that defendant was an employer where defendant "dispatched the Plaintiffs to deliver customer orders, and scheduled them to distribute flyers"). Defendants' motion to dismiss Chai is denied as well.

Plaintiffs have not, however, identified evidence from which a reasonable juror could conclude that Xiang Keng Zhu acted as Plaintiffs' employer. Plaintiffs point out that the Ke Zhang liquor license is in Xiang's name. Xiang Dep. 9:16-20. But a "liquor license alone does not create a triable issue regarding [a defendant's] operational control over" the business. *Gao v. Umi Sushi, Inc.*, No. 18-CV-06439, 2020 WL 4505523, at *4 (S.D.N.Y. Aug. 5, 2020). Xiang was a cook at T&T and he testified that he did not interact with Plaintiffs when they made deliveries for T&T. Xiang Dep. 10:14-16, 14:16-19; *see also* Chai Dep. 21:12-16 (testifying that "only" she would call Plaintiffs). There is no indication in the record that Xiang exercised any control over, or input into, their schedules. Therefore, Defendants' motion is granted as to Xiang Keng Zhu and he is dismissed.

## C.   FLSA Statute of Limitations

Defendants contend that any violation of the FLSA was not "willful," which limits the time period for liability. The

FLSA "provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Parada v. Banco Indus. de Venezuela*, C.A., 753 F.3d 62, 70 (2d Cir. 2014) (quoting 29 U.S.C. § 255(a)). "Mere negligence is insufficient." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. "Reckless disregard," in turn, "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005). Plaintiffs must therefore prove "more than that [the] defendant 'should have known' it was violating the law." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013) (quoting *Damassia*, 2005 WL 1214337, at *3 n.2).

Plaintiffs have pointed to no evidence suggesting willfulness. Their Rule 56.1 statement is silent on the subject. Other than the presence of the wage-and-hour poster that Tengyu testified he did not understand, there is simply no

19

indication in the record that Defendants understood federal or state labor laws. *E.g.*, *Padilla v. Sheldon Rabin*, 176 F. Supp. 3d 290, 304 (E.D.N.Y. 2016). There is no evidence that Defendants were previously investigated or sued for labor-law violations. *See e.g.*, *Brock*, 840 F.2d at 1061–62 (finding willfulness where employer was on notice of FLSA obligations because of prior violations and investigation by the Department of Labor). The Rule 30(b)(6) witness for Ke Zhang — Tengyu — testified that he had little to no knowledge of the labor laws. Tengyu Dep. 35:3–36:14. The most that can be inferred from this record, then, is that any FLSA violation stemmed from the Defendants' ignorance of the law, not their reckless disregard of it. *See e.g.*, *Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 (S.D.N.Y. 2012) ("[D]efendants' ignorance of the law suggests that they did not 'willfully' disregard their statutory obligations."); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 678 (S.D.N.Y. 2017) (defendants were not "willful" where their failure "stemmed from their ignorance of [notice] provision, not from an intentional disregard of its requirement"). I grant summary judgment in favor of the Defendants on the issue of willfulness. A two-year statute of limitations applies to Plaintiffs' remaining FLSA claims against Ke Zhang and Tengyu. Damages occurring before that time, therefore, are not recoverable.

### D.    Liquidated Damages

Defendants also seek summary judgment on Plaintiffs' federal and state claims for liquidated damages.  29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1).  An employer who violates the overtime wage provisions is liable for "the payment of wages lost and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  A defendant need not pay liquidated damages, however, if it demonstrates the affirmative defense of "good faith."  *E.g.*, *Hart*, 967 F. Supp. 2d at 937-38. The burden is on the defendant to establish that the affirmative defense applies.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).

To avoid liquidated damages based on good faith, "the employer must take active steps to ascertain the dictates of the [labor laws] and then act to comply with them."  *Id*.  "While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

"'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development."  *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  Defendants say they did not know the law, but they point to no evidence that they made any effort to learn it.  *Cf. JianJing Lu*, 2017 WL 3913285, at *4 (granting

21

summary judgment in plaintiff's favor on liquidated damages where defendants "did not know about or do any research regarding the various wage-and-hour laws to which they were subject"). Defendants' motion for summary judgment on the affirmative defense of "good faith" under the FLSA and NYLL is denied.

### IV. Conclusion

Defendants' motion for summary judgment is granted in part and denied in part. Defendants Li Hui Zhu and Xiang Keng Zhu are dismissed. Plaintiffs' FLSA claims against T&T restaurant and Wen Chai Zou are also dismissed.


/s Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    March 31, 2021
          Brooklyn, New York